## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WALTER GLOVER,** | : | **CIVIL NO. 1:13-CV-2729** |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PAUL HORVATH, et al.,** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a *pro se* civil rights action brought by Walter Glover, a former state inmate, who was housed at the State Correctional Institution, Waymart, at the time of this events set forth in this pleading.[1] Mr. Glover's *pro se* complaint, which was filed in November of 2013, demands a great deal of the reader, because the claims in the complaint are set forth in a confusing and elliptical fashion. However, liberally construed, it appears that Mr. Glover is attempting to advance four broad classes of legal claims.

First, in his complaint Mr. Glover seems to brings claims and causes of action on behalf of other inmates, and suggests that he is endeavoring to pursue some sort of inmate *pro se* class action. (Docs. 1 and 26.) After advancing these broad class claims,

---

[1]The docket currently reflects that Mr. Glover has been released from state custody.

Mr. Glover then asserts three claims of a more personal in nature, alleging that he has been subjected to "false misconducts," denied due process during disciplinary hearings, has experienced staff interference with his mail; and suffered a wrongful denial of parole due to his disciplinary history.

These claims are presented by Glover in a fashion which lacks a certain measure of clarity, and this lack of clarity is compounded by the exhibits which Glover submits along with his complaint, since many of these exhibits seemingly contradict his claims. For example, Glover's retaliatory discipline claims are largely undermined by the fact that it appears that he pleaded guilty to a number of these prison infractions. Likewise, the exhibits attached to Glover's complaint indicate that, on occasion, when this inmate complained about the handling of his mail, his complaints were accepted and prison officials corrected their handling of specific items of mail. Furthermore, the exhibits attached to Glover's complaint seem to contradict Glover's assertion that he fully and properly exhausted his prison grievances before filing this lawsuit, since these exhibits indicate that a number of Glover's grievances were denied because they were not presented in a timely fashion.

Citing these shortcomings in his pleadings, the defendants have moved to dismiss Glover's complaint. (Doc. 23.) This motion is fully briefed by the parties,

(Docs. 24 and 26), and this matter is now ripe for resolution.[2] For the reasons set forth below, it is recommended that this motion to dismiss be granted and that the plaintiff's complaint be dismissed, without prejudice to the plaintiff attempting to file an amended complaint which meets the pleading standards prescribed by federal law.

## II.   Discussion

### A.   Rule 12(b)(6)– The Legal Standard.

The defendants have filed a motion to dismiss this complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

---

[2]This matter was referred to the undersigned to address on May 6, 2015.

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are

not entitled to the assumption of truth." Id. at 679. According to the Supreme Court,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of

the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than

mere legal labels and conclusions. Rather, a complaint must recite factual allegations

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed: "The Supreme Court in Twombly set forth the 'plausibility' standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege 'enough facts to state a claim to relief that is plausible on its face.' Twombly, 550 U.S. at 570, 127 S.Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S.Ct. 1955). This standard requires showing 'more than a sheer possibility that a defendant has acted unlawfully.' Id. A complaint which pleads facts 'merely consistent with' a defendant's liability, [ ] 'stops short of the line between possibility and plausibility of "entitlement of relief." ' " Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011) cert. denied, 132 S. Ct. 1861, 182 L. Ed. 2d 644 (U.S. 2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an

entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also, U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien &Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. Judged against these benchmarks, we conclude that Glover's complaint fails to state a claim upon which relief may be granted. Therefore, the court should grant the defendants' motion to dismiss the complaint.

## B.   <u>Glover May Not Bring Claims on Behalf of Other Inmates</u>

At the outset, we note that it appears that Glover seeks in this complaint to bring claims on behalf of a broader class of inmates. This he may not do. Pursuant to Rule 23 of the Federal Rules of Civil Procedure there are four prerequisites which must be met before a proposed inmate class action may be certified. To obtain class certification Glover must show that:

> 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class; 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and 4) the representative parties will fairly and adequately protect the interests of the class.

See Fed.R.Civ.P. 23(a). These requirements are set forth in Rule 23 in the conjunctive. Therefore, a district court can only certify a class if all four requirements of Rule 23(a) are met. See In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 n.6 (3d Cir. 2008); In re Prudential Ins. Co. of America Sales Practice Litigation, 148 F.3d 283, 308-09 (3d Cir. 1998). Since all four of these elements must be met before a class action may be certified, the failure to satisfy any single element is fatal to Glover's request to pursue claims on behalf of a class of other inmates.

In this case, turning first to Rule 23's requirement that "the representative parties will fairly and adequately protect the interests of the class," we find that Glover cannot serve as a fair and adequate class representative at this time. In this regard, Glover's proposal runs afoul of a settled tenet of case law in this field. It is well-settled that: "a prisoner proceeding *pro se* may not seek relief on behalf of his fellow inmates. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir.1975) ('[I]t is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.'); see also Wallace v. Smith, 145 Fed. Appx. 300, 302 (11th Cir.2005)." Alexander v. New Jersey State Parole Bd., 160 F.App'x 249, 250 (3d Cir. 2005). Thus, "*pro se* litigants are generally not appropriate as class representatives. See Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir.1975)." Hagan v. Rogers, 570 F.3d 146, 159 (3d Cir. 2009). Since Glover cannot meet this threshold requirement that the representative party will fairly and adequately protect the interests of the class,  this

*pro se* request for class certification should be denied, and the claims that Glover

purports to bring on behalf of others should also be dismissed.

## C.   Many of Glover's Claims Appear to be Unexhausted

Further, the exhibits attached to Glover's complaint indicate that many of

Glover's institutional grievances were dismissed or denied due to Glover's failure to

properly and timely exhaust his administrative remedies. The Prison Litigation Reform

Act, 42 U.S.C. § 1997 ("PLRA") requires that prisoners present their claims through

an administrative grievance process prior to seeking redress in federal court.

Specifically, the Act provides that:

> No action shall be brought with respect to prison conditions
> under [§ 1983], or any other federal law, by a prisoner
> confined in any jail, prison, or other correctional facility
> until such administrative remedies as are available are
> exhausted.

42 U.S.C. § 1997e(a).  In accordance with the PLRA, prisoners must comply with

exhaustion requirements with respect to any claim that arises in the prison setting,

regardless of the type of claim asserted, or the relief sought. See Porter v. Nussle, 534

U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate

suits about prison life, whether they involve general circumstances or particular

episodes, and whether they allege excessive force or some other wrong."); Booth v.

Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the

forms of relief sought and offered through administrative avenues.").

As the statute's language makes clear, the exhaustion of available administrative remedies <u>prior</u> to filing suit is mandatory.  <u>See</u> <u>Nyhuis v. Reno</u>, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court – or any other – to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.") (quoting <u>Beeson v. Fishkill Corr. Facility</u>, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998)).  Whether an inmate has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts.  <u>See</u> <u>Small v. Camden County</u>, 728 F.3d 265 (3d Cir. 2013); <u>see also</u> <u>Drippe v. Tobelinski</u>, 604 F.3d 778, 781 (3d Cir. 2010).

Moreover, the exhaustion requirement of the PLRA is one of "proper exhaustion."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 (2006).  Failure to comply with the procedural requirements of the available grievance system will result in a claim being deemed procedurally defaulted.  <u>Id.</u> at 90; <u>Spruill v. Gillis</u>, 372 F.3d 218, 227-32 (3d Cir. 2004).  An inmate cannot circumvent the PLRA's exhaustion requirement by failing to properly exhaust the prison's administrative review process, or by waiting until such remedies are no longer available to him.  <u>Woodford</u>, 548 U.S. at 95.  However, if an inmate shows that the actions of prison officials directly caused the inmate's procedural default of a grievance, the inmate will not be held to strict compliance with the exhaustion requirement.  <u>Brown v. Croak</u>, 312 F.3d 109, 112-13.

Likewise, "[w]here [the inmate] failed to receive even a response to the grievances addressing the . . . incidents, much less a decision as to those grievances, the [administrative remedy] process was unavailable to him." Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013).

Proper exhaustion of a grievance means that a prisoner must refrain both from acting too soon or waiting until it is too late to act. Thus, "[a]n 'untimely or otherwise procedurally defective administrative grievance or appeal' does not satisfy the mandatory exhaustion requirement of the PLRA. Woodford v. Ngo, 548 U.S. 81, 83, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006); see also Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir.2004)." Barrick v. Prison Health Sys./Med., 335 F. App'x 153, 155 (3d Cir. 2009). Similarly, the procedural default component of the PLRA's proper exhaustion requirement does not permit "the filing of a suit before administrative exhaustion, however late, has been completed." Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002) citing Perez v. Wis. Dep't of Corr., 182 F.3d 532, 534–35 (7th Cir.1999) (observing "Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit"); Neal v. Goord, 267 F.3d 116, 122 (2d Cir.2001) (holding that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after filing her complaint in federal court). Accord Jackson v. District of Columbia, 254 F.3d 262, 269 (D.C.Cir.2001); Freeman v. Francis, 196 F.3d 641, 645 (6th

Cir.1999); <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1328 (11th Cir.1998); <u>Garrett v. Hawk</u>, 127 F.3d 1263, 1265 (10th Cir.1997).

In this case, given the uncontradicted assertions reflected in the exhibits attached to Glover's complaint, which indicate that many of Glover's grievances were untimely or otherwise procedurally defective, we are constrained to conclude that Glover has not properly exhausted his administrative grievances, and these claims should be dismissed for failure to exhaust these administrative remedies. This principle applies with particular force to Glover's grievances regarding his mail processing since it appears from the exhibits that Glover attached to his complaint that the plaintiff procedurally defaulted on many of these mail handling grievances. (Doc. 1, Ex. Y.)

> ### D. <u>Glover's Disciplinary Misconduct Complaints Fail as a Matter of Law.</u>

Further, Glover's *pro se* complaint brings a series of claims against prison officials arising out of disciplinary actions which Glover experienced in prison. In particular, Glover seems to complain that he was convicted of "false misconducts.' The exhibits attached to Glover's complaint reveal, however, that Glover pleaded guilty to a number of these violations, which arose out of a November 2011 argument and affray with a fellow prisoner, and Glover's alleged deceit to staff regarding this episode of inmate-on-inmate violence.

In our view, as pleaded by Glover these claims fail for at least three reasons. First, to the extent that Glover is attempting to bring a substantive due process claim arising out of this prison discipline, which apparently resulted in 120 days of disciplinary custody, his claims fail as a matter of law since Glover's complaint stems from the erroneous legal premise that his placement in disciplinary segregation for 120 days implicates a sufficient legal interest to trigger specific substantive due process protections. In analyzing any due process claim, "the first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000) (citing Fuentes v. Shevin, 407 U.S. 67 (1972)).   Once we determine that a property or liberty interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Id. (citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). In the case of prison inmates,

> [i]n Sandin v. Conner, the Supreme Court announced a new standard for determining whether prison conditions deprive a prisoner of a liberty interest that is protected by procedural due process guarantees.  Although the Court acknowledged that liberty interests could arise from means other than the Due Process Clause itself, the Court concluded that state-created liberty interests could arise only when a prison's action imposed an '*atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life*.' . . . In finding that the prisoner's thirty-day confinement in disciplinary custody did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest, the Court considered the following two factors:  1) the amount of time the prisoner was placed into disciplinary segregation; and 2) whether the conditions of his confinement in disciplinary segregation

> were significantly more restrictive than those imposed upon other inmates in solitary confinement.

Shoats, 213 F.3d at 143-44(citations omitted, emphasis added).

Applying these legal benchmarks, it has been held that disciplinary proceedings which result in sanctions of disciplinary segregation for six months or more do not impose atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life in similar situations, and therefore do not give rise to due process claims. Smith v. Mensinger, 293 F.3d 641, 654 (3d Cir. 2002)(7 months disciplinary confinement). Therefore, as a threshold matter, to the extent that he advances a substantive due process argument, Glover has not articulated a sufficient liberty interest to trigger a valid due process claim in this prison setting.

Furthermore, Glover's disciplinary claims fail as a matter of constitutional law since the requisites of due process in a prison disciplinary setting were fully met here. It is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a

defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts find violations of this due process right based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v. Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to sustain due process challenges to disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

A prison disciplinary determination comports with due process if it is based on "some evidence." See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56

(1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board"). This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence. See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989). Therefore, it is well settled that disciplinary decisions are entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision. Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).   Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [hearing officer]." Freeman, 808 F.2d at 954. As the Supreme Court has observed, the "some evidence" standard is a highly deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456.

Provided that a prisoner is afforded these due process protections during the disciplinary hearing process, it is well-settled that a claim that a misconduct report was

false, standing alone, does not state a valid cause of action. As the United States Court of Appeals for the Third Circuit has aptly observed: "[F]iling false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided. See e.g., Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir.1986) (the filing of false charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir.1984)." Richardson v. Sherrer, 344 F. App'x 755, 757-758 (3d Cir. 2007). See also Booth v. Pence, 141 F. App'x 66 (3d Cir. 2005); Smith v. Mensinger, 293 F.3d 641, 653-54 (3d Cir. 2002).

These principles directly apply to inmate retaliation claims stemming from prison disciplinary proceedings. A prisoner claiming that prison officials have retaliated against him for exercising his constitutional rights must prove the following three elements: (1) the conduct in which he engaged was constitutionally protected; (2) he suffered adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial motivating factor in the defendants' conduct. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). With respect to the obligation to demonstrate that he suffered an adverse action, a plaintiff must demonstrate that he suffered action that "was sufficient to deter a person of ordinary firmness from exercising his rights." Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000). While filing false misconduct reports may constitute the type of action that will, in certain

cases, support a retaliation claim, <u>Mitchell v. Horn</u>, 318 F.3d 523, 530 (3d Cir. 2003), in a prison discipline context, an inmate's retaliation claim fails whenever the defendant shows that there is "some evidence" to support the discipline citation. As the United States Court of Appeals for the Third Circuit has observed: "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . <u>See Henderson v. Baird</u>, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)." <u>Nifas v. Beard</u>, 374 F.App'x 241, 244 (3d Cir. 2010).

Judged against these standards, we find that Glover has failed to adequately support his complaints about this prison discipline, regardless of whether those claims are cast as  due process violations or retaliatory conduct by prison officials. These disciplinary claims encounter what seems to be an insurmountable obstacle–the exhibits attached to the complaint appear to indicate the Glover pleaded guilty to these infractions.   Since "filing false disciplinary charges does not itself violate a prisoner's constitutional rights, so long as procedural due process protections were provided," <u>Richardson v. Sherrer</u>, 344 F. App'x 755, 757-758 (3d Cir. 2007)(citations omitted), and  "[an inmate's] retaliatory discipline claim fails [when] there is 'some evidence' supporting the guilty findings . . . . <u>See Henderson v. Baird</u>, 29 F.3d 464, 469 (8th Cir.1994) (stating that a finding of 'some evidence' to support a prison disciplinary determination 'checkmates' the prisoner's retaliation claim)," <u>Nifas v. Beard</u>, 374

F.App'x 241, 244 (3d Cir. 2010), Glover's guilty plea to these infractions would seem to constitute an admission of wrongdoing on his part, and admission that would largely defeat these claims.

<strong>E.    <u>Glover's Complaints Regarding the Denial of Parole Are Also Unavailing</u></strong>

Finally, Glover's complaints that he was denied parole are also unavailing. In this regard, Glover simply errs when he suggests that he might have some substantive right to parole. Quite the contrary, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials offend due process. See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006); Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).

These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp.

2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole).These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp. 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993). Rather, as the Pennsylvania Supreme Court has aptly noted, under state law: "It is undisputed that [an inmate] does not have a clear legal right to the grant of parole, nor does the board have a corresponding duty to grant the same." Coady v. Vaughn, 770 A.2d 287, 289(2001); see also Rogers v. Pa. Bd. of Probation and Parole, 724 A.2d 319, 323 (Pa. 1999).

Since a discretionary decision of the Parole Board denying an inmate early parole does not implicate any constitutionally protected liberty interest, the scope of federal judicial review of these decisions is necessarily quite limited. In the absence of a specific, articulated constitutional right to parole, the role of this Court in reviewing a state parole denial has been defined by the United States Court of Appeals for the Third Circuit in the following terms: "[E]ven if a state statute does not give rise to a liberty interest in parole release under Greenholtz, once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." Block v. Potter, 631 F.2d 233, 236 (3d Cir.1980); Bonsall v. Gillis, 372 F.Supp.2d 805, 807 (M.D. Pa. 2005)(quoting Block). However, when ensuring that state parole denials

are not motivated by arbitrary or constitutionally impermissible reasons, it is clear that "federal courts, . . . are not to 'second-guess parole boards', and the requirements of substantive due process are met if there is some basis for the challenged decision." Hunterson v. DiSabato, 308 F.3d 236, 246 (3d Cir. 2002). See also Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001)(held, federal courts are not authorized by the due process clause to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision). Moreover, the "relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but, rather, something more egregious, which we have termed at times 'conscience shocking' or 'deliberately indifferent.'" Hunterson, 308 F.3d at 247.

Judged against this deferential standard, Glover's complaints that he was not given the more favorable parole consideration simply does not state a claim which shocks the conscience or is sufficiently egregious to be characterized as arbitrary and capricious. It appears that these parole decisions were based, in part, upon Glover's disciplinary history. That disciplinary history, in turn, largely entails infractions that Glover has apparently admitted committing. Reliance on such matters in the exercise of the parole board discretion seems entirely proper. Therefore, it cannot be said that this course of conduct was "'conscience shocking' or 'deliberately indifferent,'"

Hunterson, 308 F.3d at 247, the benchmarks for a due process violation in this setting, and this claim also fails as a matter of law.

### F.   The Complaint Should be Dismissed Without Prejudice

We recognize that *pro se* plaintiffs should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  In this case, Glover has not alleged facts that would state a claim upon which relief may be granted, and it appears that he may be unable to do so. Nonetheless, out of an abundance of caution, and in order to preserve the plaintiff's rights, it is recommended that this matter be dismissed without prejudice to Glover attempting to amend this federal complaint  to state a claim upon which relief may be granted in federal court, by including proper allegations that meet the requirements of federal law.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motion to Dismiss the complaint. (Doc. 23) be GRANTED  but that the dismissal of this action be without prejudice to any effort by the plaintiff to timely

allege facts in an amended complaint which might state a claim upon which relief may

be granted, provided that the plaintiff acts within 20 days of any dismissal order..

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 18th day of May, 2015.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge